THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ANTONIO B. BROWN, Defendant-Appellee.

Fourth District   No. 4—03—0259

Opinion filed December 29, 2003.

364

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James B. Kuehl, of Thomas A. Bruno & Associates, of Urbana, for appellee.

JUSTICE COOK delivered the opinion of the court:

Following an encounter with a police officer, defendant Antonio B. Brown was charged with obstructing justice (720 ILCS 5/31—4(a) (West 2002)). He moved to suppress the evidence obtained by the police officer, and the trial court granted this motion. The State appeals, having certified under Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)) that its ability to prosecute Brown would be substantially impaired without the evidence that was suppressed.

At the hearing on Brown's motion to suppress (labeled a "motion

to quash arrest"), the only witness was Officer Dennis Baltzell of the Champaign police department. The following statement of facts is taken solely from his testimony. On Saturday, November 9, 2002, Baltzell was patrolling Champaign in his squad car. At 6:46 p.m., he was driving past 904 North Fourth Street when he saw Brown standing alone in the parking lot. The building at that address is a small strip mall containing a grocery store, a restaurant, and two or three other businesses. Brown was standing in front of the grocery store, approximately 5 or 10 feet from its door. The store was closed, but the restaurant next door was open. Brown was between 15 and 20 feet from the door of the restaurant.

Baltzell "thought it was odd" that someone was standing in front of a closed business, so he circled the block and pulled into the parking lot. Brown had not moved, but as the squad car entered the parking lot, he began to walk away. Baltzell testified that at this point he "asked [Brown] if he would stop so [Baltzell] could talk to him." Brown did stop, about 15 or 20 feet from the squad car, and Baltzell identified himself. He then told Brown that he wanted to speak to him about why he was standing in front of a closed business.

Baltzell asked Brown for identification, and Brown replied that he had none. When Baltzell asked for Brown's name, address, and date of birth, Brown responded that he was Tony B. Brown, born on March 4, 1983. Baltzell radioed Metcad, the computer-aided dispatch service, with this information. Finding an outstanding City of Champaign warrant for Brown's arrest, Baltzell arrested him.

Based on this encounter, the State originally charged Brown with one count of obstructing justice. The information alleged that Brown, intending to prevent his own apprehension, "knowingly furnished false information to Dennis Baltzell ***, namely: a name of Tony Brown, as opposed to the correct name of Antonio B. Brown." The State's Attorney later added two more counts, one alleging that Brown had falsely stated that he was not carrying identification, and the other alleging that he had given a false name (Tony B. Brown) when asked what name appeared on his birth certificate.

After hearing the evidence presented at the hearing, the trial court found that Brown had been stopped without justification and ordered that Brown's answers to the police officer's questions be suppressed. The State appeals that decision, arguing that the trial court erred in granting the motion because (1) Brown was not "seized" within the meaning of the fourth amendment; (2) if he was seized, it was a lawful seizure; and (3) in any case, the State should be allowed to use the evidence under what it terms the "distinct-crime" exception to the fruit-of-the-poisonous-tree doctrine.

■ Where a motion to suppress evidence involves factual determinations or assessments of credibility, we will reverse the trial court's ruling only if it is manifestly erroneous. *People v. Anthony*, 198 Ill. 2d 194, 200-01, 761 N.E.2d 1188, 1191 (2001). A manifestly erroneous decision is one that is arbitrary, unreasonable, and not based on the evidence. *People v. Ceja*, 204 Ill. 2d 332, 347, 789 N.E.2d 1228, 1239 (2003). We give deference to the trial court's decision on a motion to suppress, because it is best placed to determine the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence. *People v. Ballard*, 206 Ill. 2d 151, 162, 794 N.E.2d 788, 798 (2002). Even if the facts are not disputed, if reasonable persons could draw different inferences from them, it is left to the trier of fact to resolve those questions. See *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424, 706 N.E.2d 460, 463 (1998).

■ The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The cases interpreting the amendment have produced three levels of encounter between police and citizens. *People v. Gherna*, 203 Ill. 2d 165, 176, 784 N.E.2d 799, 806 (2003). First, the police may arrest a citizen only with probable cause that a crime has been committed. *Gherna*, 203 Ill. 2d at 176, 784 N.E.2d at 806. The middle level is the brief investigatory seizure known as the *Terry* stop, which requires a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Gherna*, 203 Ill. 2d at 177, 784 N.E.2d at 806. Finally, there are purely consensual encounters between police and citizen, which do not involve a seizure at all. *Gherna*, 203 Ill. 2d at 177, 784 N.E.2d at 806.

■ An individual has been seized in the fourth amendment sense when an officer " 'has in some way restrained the liberty of a citizen.' " *Gherna*, 203 Ill. 2d at 177-78, 784 N.E.2d at 807, quoting *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991). This is so when, in view of all the relevant circumstances surrounding the incident, the individual would not feel free to terminate the encounter with the police officer. *Gherna*, 203 Ill. 2d at 178, 784 N.E.2d at 807. In this case, it is undisputed that Brown was standing in a parking lot doing nothing illegal when Baltzell arrived in his squad car. When Brown began to leave, Baltzell spoke to him. The trial court found: "The officer said stop. There is no testimony the officer said, 'may I please talk to you?' and that the defendant turned around and said 'sure.' The testimony is he asked him to stop, which is more of a command than a request to talk to him." Based on these findings, the trial court found that Brown had been seized, and we will not lightly disturb that determination.

■ The State argues that even if Brown was seized, the seizure was lawful. Conceding that a lawful seizure under these circumstances would require Baltzell to have a reasonable suspicion that Brown was engaged in or about to be engaged in criminal activity, the State argues that this standard has been met. A police officer may conduct a *Terry* stop only when he can point to specific and articulable facts that, taken together with rational inferences, reasonably warrant the intrusion. *People v. Cox*, 202 Ill. 2d 462, 467, 782 N.E.2d 275, 278 (2002). The only facts that the State identifies in support of its argument are that Brown was standing alone in front of a closed business, which was next to an open one, at 6:46 p.m. on a Saturday night. The trial court therefore found that Baltzell did not have reasonable suspicion to stop Brown. Giving appropriate deference to the trial court's factual findings, we cannot say that this determination was manifestly erroneous.

■ Finally, the State argues that even if Baltzell did seize Brown without reasonable suspicion, it should be allowed to use evidence of the seizure in prosecuting Brown because of the "distinct-crime" exception to the fruit-of-the-poisonous-tree doctrine. The fruit-of-the-poisonous-tree doctrine holds that where the police obtain evidence through the violation of a person's constitutional rights, the State ordinarily may not use that evidence in prosecuting that person. *People v. McCauley*, 163 Ill. 2d 414, 448, 645 N.E.2d 923, 940 (1994). In *People v. Abrams*, 48 Ill. 2d 446, 271 N.E.2d 37 (1971), however, the Supreme Court of Illinois held that when an unconstitutional search leads to retaliation by the person whose constitutional rights have been violated, the State may use evidence of that retaliation. The court in that case refused to apply the fruit-of-the-poisonous-tree rule to suppress evidence that the defendants had physically attacked the police officers who executed an unconstitutional search. *Abrams*, 48 Ill. 2d at 455, 271 N.E.2d at 43.

■ We do not believe that the rule established in *Abrams* should be applied to this case. The court there said that it would not use the exclusionary rule to allow "what can be regarded as an unlawful species of self-help," by suppressing evidence that the defendants had physically resisted the illegal search. *Abrams*, 48 Ill. 2d at 456, 271 N.E.2d at 43. The most recent supreme court case on this issue adds that "defendants cannot rely on the exclusionary rule to suppress evidence of their physical actions directed against the officers on the basis of the officers' illegal entry into their home." *People v. Villarreal*, 152 Ill. 2d 368, 380, 604 N.E.2d 923, 929 (1992). The thrust of these

cases is clearly the protection of law enforcement officers from people who physically resist unconstitutional searches and seizures. The same can be said for the cases cited to us by the State. See *United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997) (defendant fired gun at police); *United States v. Bailey*, 691 F.2d 1009 (11th Cir. 1982) (defendant struck federal drug enforcement agent in effort to escape). We decline to extend the *Abrams* rule to cover Brown's conduct in this case. Brown falsely stated that he was not carrying identification in answer to a police officer's question, when the officer had seized him without justification. Although providing false information with the intent to avoid arrest would be criminal behavior (720 ILCS 5/31—4(a) (West 2002)), Brown was simply responding to the officer's questioning in conjunction with an illegal seizure. Refusing to provide identification does not raise the same policy concerns as assaulting a law enforcement officer, and thus Brown's statements may be suppressed as the fruit of the unconstitutional seizure.

For the reasons stated, we affirm the trial court's grant of Brown's motion to suppress.

Affirmed.

MYERSCOUGH, J., concurs.

JUSTICE TURNER, dissenting:
I respectfully dissent.

I begin by noting that I do not address whether the majority correctly determined that Brown was seized in violation of his fourth amendment rights because, even if the majority is correct, the fruit-of-the-poisonous-tree doctrine does not extend to suppress Brown's conduct that formed the basis of his obstructing-justice charges.

The fruit-of-the-poisonous-tree doctrine applies where police officers violate a defendant's fourth amendment rights. The constitutional violation is termed the "poisonous tree," and any evidence that the State obtains by exploiting that constitutional violation is subject to suppression as the "fruit" of that poisonous tree. *McCauley*, 163 Ill. 2d at 448, 645 N.E.2d at 940.

However, our supreme court has declined to extend the exclusionary rule to suppress evidence of crimes that arise from and are in reaction to an illegal search or seizure. *Abrams*, 48 Ill. 2d at 455-57, 271 N.E.2d at 43-44. Specifically, the *Abrams* court held "that an accused cannot effectively invoke the fourth amendment to suppress evidence of his own unlawful conduct which was in response to police actions in violation of the amendment." *Abrams*, 48 Ill. 2d at 455, 271

N.E.2d at 43. Accordingly, the fruit-of-the-poisonous-tree doctrine does not provide for the suppression of evidence of a defendant's own unlawful conduct in response to police conduct that was in violation of the fourth amendment. See *People v. Santana*, 121 Ill. App. 3d 265, 270, 459 N.E.2d 655, 659 (1984).

Despite *Abrams'* explicit holding, the majority writes "[w]e do not believe that the rule established in *Abrams* should be applied to this case." 345 Ill. App. 3d at 367. Instead, the majority concludes the "thrust" of *Abrams* and the subsequent supreme court decision in *Villarreal* "is clearly the protection of law enforcement officers from people who physically resist unconstitutional searches and seizures." 345 Ill. App. 3d at 368. The majority then declines "to extend the *Abrams* rule to cover Brown's conduct in this case" because "[r]efusing to provide identification does not raise the same policy concerns as assaulting a law enforcement officer." 345 Ill. App. 3d at 368.

I disagree with the majority's decision for three reasons. First, while stating it declined to extend *Abrams*, the majority is actually limiting the holding in *Abrams* to cases involving protection of law enforcement officers from people who physically resist unconstitutional searches and seizures. As noted, the *Abrams* court stated that "an accused cannot effectively invoke the fourth amendment to suppress evidence of his own unlawful conduct which was in response to" an illegal search or seizure. *Abrams*, 48 Ill. 2d at 455, 271 N.E.2d at 43. That language does not limit the defendant's conduct to acts of physical resistance, and it is not this court's prerogative to impose such a limit.

Second, the majority's limitation of *Abrams* to acts of physical resistance is also inconsistent with our supreme court's rationale in *Abrams*. The *Abrams* court cited with approval *Vinyard v. United States*, 335 F.2d 176 (8th Cir. 1964), *United States v. Perdiz*, 256 F. Supp. 805 (S.D.N.Y. 1966), *United States v. Troop*, 235 F.2d 123 (7th Cir. 1956), and *People v. Guillory*, 178 Cal. App. 2d 854, 3 Cal. Rptr. 415 (1960). See *Abrams*, 48 Ill. 2d at 456-57, 271 N.E.2d at 43-44. Those cases all involved attempted briberies of officers following searches and seizures deemed to have been unlawful. *Abrams*, 48 Ill. 2d at 456, 271 N.E.2d at 44. The courts all treated the attempted briberies as independent of the unlawful searches and seizures, and our supreme court stated "[w]e consider these refusals to extend the exclusionary rule to have been correct." *Abrams*, 48 Ill. 2d at 456-57, 271 N.E.2d at 44. Thus, the majority's limitation of *Abrams* to cases involving physical resistance is untenable.

Third, I conclude the majority takes too narrow a view of the "policy concerns" behind the *Abrams* decision and those at issue in

cases such as this. In its analysis, the majority states "[r]efusing to provide identification does not raise the same policy concerns as assaulting a law enforcement officer." 345 Ill. App. 3d at 368. Initially, I note Brown was not charged with refusing to provide identification but instead is alleged to have provided the police officer with false information, including giving a false name.

The protection of law enforcement officers is clearly a proper policy concern for not extending the exclusionary rule to suppress evidence of physical resistance. Such acts could easily lead to physical harm to police officers or to those who are resisting, and thus justify the limitation on the exclusionary rule. However, the protection of the public is also a relevant policy consideration for not extending the exclusionary rule to suppress evidence of new independent crimes, even if those crimes do not involve acts of physical resistance.

Moreover, the need to protect the public increases with the seriousness of the crime. "As an institution, the legislature is better equipped than the judiciary to identify and remedy the evils confronting our society and is more capable of gauging the seriousness of an offense." *People v. Hill*, 199 Ill. 2d 440, 454, 771 N.E.2d 374, 383 (2002). Accordingly, courts will generally defer to the legislature's judgment that a particular offense is more serious than another. *Hill*, 199 Ill. 2d at 454, 771 N.E.2d at 383. Here, however, the majority extends the exclusionary rule to suppress evidence of obstructing justice, a Class 4 felony (720 ILCS 5/31—4(d)(1) (West 2002)), but fails to appreciate the extension of the rule has already been refused for resisting or obstructing a peace officer, a Class A misdemeanor (720 ILCS 5/31—1(a) (West 2002)). See *Villarreal*, 152 Ill. 2d at 378-79, 604 N.E.2d at 928. By the classification of these offenses, the legislature has determined the act of obstructing justice to be more serious, and presumably, potentially more dangerous, than the act of resisting or obstructing a peace officer.

Also, as previously noted, the supreme court in *Abrams* approved of the refusal to extend the exclusionary rule to suppress evidence of attempted bribery following police conduct that violated the fourth amendment. The majority's decision today would require an opposite result because the majority chooses to apply *Abrams* only to cases involving physical resistance. Thus, evidence of a bribery, a Class 2 felony (720 ILCS 5/33—1(f) (West 2002)), and attempt (bribery), a Class 3 felony (720 ILCS 5/8—4(c)(4) (West 2002)), would be suppressed despite the seriousness of these offenses. Accordingly, the majority's limitation of *Abrams* to cases involving physical resistance is baseless when the legislature has determined certain crimes not involving physical resistance are in fact more serious.

In my view, these different applications of the exclusionary rule are unreasonable as well as unwarranted. Neither our society nor our system of jurisprudence condones unlawful responses to unlawful conduct. Indeed, unlawful responses to unlawful conduct are to be discouraged, and more precisely, deterred to best protect our citizenry. Applying the precise holding of *Abrams* accomplishes this purpose, while parsing its application to only some criminal offenses does not.

As a final matter, I note the dubious nature of the charge against Brown, *i.e.*, committing the offense of obstructing justice by indicating his name was Tony B. Brown rather than Antonio B. Brown. However, we do not have sufficient facts before us to determine the State's justification for this charge, and in any event, the posture of this case presents only the issue of whether Brown's statement should be suppressed. Because I conclude it should not, I would reverse and remand.