2006-NMCA-146

149 P.3d 99

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**TRAVISON B., a Child, Defendant–
Appellant.**

**No. 25,562.**

Court of Appeals of New Mexico.

Oct. 16, 2006.

Certiorari Denied, No. 30,071,
Nov. 27, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

Liane E. Kerr, Albuquerque, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} In this appeal in a delinquency proceeding, we determine that even if we assume that the officers violated the rights of Child and his family under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution by entering their apartment without a warrant, the district court properly denied Child's motion to suppress evidence of Child's actions attacking the officers within the apartment. We therefore affirm.

### BACKGROUND

{2} Police Officer Ferrin Smith and Detective Jason Smerglia of the Farmington Police Department responded to a 911 call of arguing and fighting and a "possible domestic violence situation," including assault or battery on a household member, in an apartment near the caller. When Officer Smith

first approached the apartment, the door was ajar and then shut. When Detective Smerglia arrived and Officer Smith knocked on the door, a woman, Child's mother, opened the door. She was intoxicated and appeared as if she had been crying. Officer Smith attempted to gather information, as he would when investigating a possible domestic violence crime. He believed that the woman was "actively trying to keep [him] from seeing inside the apartment" and trying to close the door on him as he was talking to her. He became concerned that there had been a fight, that there were others in the apartment, and that someone could have been injured. When he was explaining to the woman that he wanted to enter the apartment to make sure no one was hurt, he heard a male voice from the other side of the door yell at him, "What ... do you want? You don't need to see inside the ... apartment." Because of the "very aggressive tone" of the voice, Officer Smith believed he needed to open the door to ascertain if he and Detective Smerglia, or the woman, was in danger of "an immediate battery." He pushed the door open and observed Child walking aggressively toward Detective Smerglia and him, in such a way that he believed that he was in danger of "immediate battery." Officer Smith and Detective Smerglia attempted to subdue Child in the doorway. In the effort, Child pulled his fist back as if he was ready to punch Detective Smerglia.

{3} Child asked the district court to suppress evidence of Child's actions after the officers entered the apartment. He contended that the officers' entry into the apartment violated Child's constitutional rights because the officers did not have a warrant, consent, or exigent circumstances. The State responded that the officers' actions were proper because of: (1) the officers' concern that someone may have been hurt within the apartment; (2) at least a reasonable suspicion that an assault against a household member had occurred; or (3) exigent circumstances, such as the officers' concern for their own safety, the safety of Child's mother, or the escape of persons in the apartment. The district court denied the motion. Child entered a plea and disposition agreement, admitting to the charge of battery on a police officer and reserving the right to appeal from the issues raised by his motion to suppress. In its judgment and disposition, the district court ordered Child to serve a period of probation of one year.

## INAPPLICABILITY OF EXCLUSIONARY RULE

■ {4} The issue before us concerns the application of the exclusionary rule to evidence obtained by the officers after entering the apartment. It focuses upon the ability of a police officer to respond to a threat of force, even if the officer is acting beyond constitutional parameters, and raises the question of whether evidence obtained in such circumstances is admissible in a criminal prosecution for the threatening conduct. Because we address only the legal conclusion of the district court's order denying the motion to suppress, our review is de novo. *See State v. Morales,* 2005–NMCA–027, ¶ 8, 137 N.M. 73, 107 P.3d 513.

■ {5} The exclusionary rule enforces the constitutional protections of the home and person against unreasonable searches and seizures. *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Gutierrez,* 116 N.M. 431, 445–46, 863 P.2d 1052, 1066–67 (1993). By virtue of the exclusionary rule, evidence obtained by law enforcement during the course of an unconstitutional search is not admissible in a criminal trial of the subject of the unlawful search. *Gutierrez,* 116 N.M. at 445–46, 863 P.2d at 1066–67. The rule applies to testimony about observations made during an unlawful intrusion, as well as to objects seized. *Wong Sun,* 371 U.S. at 485, 83 S.Ct. 407.

{6} The circumstances of this case, in which officers testified about a battery upon them, have import. This Court addressed similar circumstances in *State v. Chamberlain,* 109 N.M. 173, 783 P.2d 483 (Ct.App. 1989), *approved,* 112 N.M. 723, 819 P.2d 673 (1991). In *Chamberlain,* officers entered the defendant's home by consent and activated a tape recorder while they conducted a search. *Id.* at 174, 783 P.2d at 484. The defendant withdrew his consent, and when the officers did not leave, the defendant shot and killed

one of the officers. *Id.* The issue under the exclusionary rule was whether the officers exploited their allegedly unlawful presence. *Id.* at 175, 783 P.2d at 485. We held, as a matter of public policy, that it would be inappropriate to apply the exclusionary rule to "in effect give the victims of illegal searches a license to assault and murder the officers involved." *Id.* (internal quotation marks and citation omitted).

{7} Although Child's actions are not as egregious, the same result applies in this case. We reach this conclusion giving consideration to our Supreme Court's analysis in *State v. Doe,* 92 N.M. 100, 583 P.2d 464 (1978). In *Doe,* the issue was not the exclusion of evidence, but whether a person who uses force against an officer to resist a search after an illegal arrest may be convicted of battery on a police officer, the same crime involved in this case. *Id.* at 102–03, 583 P.2d at 466–67. The crime consists of "the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." NMSA 1978, § 30–22–24(A) (1971). The defendant in *Doe* attacked officers searching him at the police station after he had been illegally arrested. *Doe,* 92 N.M. at 101–02, 583 P.2d at 465–66.

{8} As this Court did in *Chamberlain,* our Supreme Court in *Doe* also focused on policy concerns. *Doe,* 92 N.M. at 102–03, 583 P.2d at 466–67. It noted the potential for violence and serious physical injury if a person objecting to the legality of a search could take self-help measures. *Id.* Stressing "the societal interest in the orderly settlement of disputes between citizens and their government," it concluded that the appropriate action for a person in that situation is "to submit peaceably and to take recourse in . . . legal remedies." *Id.* at 103, 583 P.2d at 467. After concluding that "a private citizen may not use force to resist a search by an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal," our Supreme Court then addressed the element of the crime that the officers were acting within the "lawful discharge of [their] duties." *Id.* It determined that they were within the lawful discharge of their duties, because they were still acting within their authority, although there was not probable cause for the arrest. *Id.* In concluding that the defendant committed a battery upon a peace officer, the Court held that the officers were acting within their authority as long as they were acting "within the scope of what [they were] employed to do." *Id.*

{9} This case is different from *Chamberlain* in the degree of the actions taken against the officers. It is different from *Doe* in that the officers taking action in *Doe* were not the same officers who took the alleged unlawful action. Nevertheless, the same policy concerns of *Chamberlain* and *Doe* counsel our decision. Even if we were to assume that the officers entered the apartment unlawfully, the societal interests of avoiding violence and in the orderly settlement of disputes do not countenance an attack on police officers, provided that the officers were acting "within the scope of what [they were] employed to do." *Doe,* 92 N.M. at 103, 583 P.2d at 467. When an officer is so acting, societal interests dictate the protection of the officer from attack by someone who may question, albeit reasonably, the legality of the officer's actions. The exclusionary rule does not foreclose the use of evidence obtained by officers of actions taken against them in response to their entry. *See United States v. Waupekenay,* 973 F.2d 1533, 1537–38 (10th Cir.1992) (reversing the suppression of evidence of an assault on officers after an unlawful entry and recognizing that many other federal and state courts have similarly rejected efforts to suppress evidence of violence toward officers subsequent to an unlawful search or seizure or warrantless entry). Although precipitated by the entry, Child's actions against the officers constituted new criminal activity that is not subject to the exclusionary rule. *See Brown v. City of Danville,* 44 Va.App. 586, 606 S.E.2d 523, 530–32 (2004) (stating that the overwhelming weight of authority does not apply the exclusionary rule to "new and distinct criminal acts in response to unlawful police conduct"); *United States v. Bailey,* 691 F.2d 1009, 1017 (11th Cir.1982) (noting that even though there may be a causal connection to unlawful police conduct, the exclusionary rule does not preclude evidence

of a new crime committed against police officers). The aggrieved person's rights lie in a civil action, not in a physical attack. *See State v. Wiegmann,* 350 Md. 585, 714 A.2d 841, 849 (1998) ("Close questions as to whether an officer possesses articulable suspicion must be resolved in the courtroom and not fought out on the streets.") (internal quotation marks and citation omitted).

{10} We lastly consider whether *Gutierrez* requires a different result under the New Mexico Constitution. Child argued to the district court that Article II, Section 10 of the New Mexico Constitution, which requires a warrant to afford protection from an unreasonable search or seizure, has been interpreted more expansively than the Fourth Amendment to the United States Constitution. In *Gutierrez,* our Supreme Court adopted the exclusionary rule for application to the New Mexico Constitution and held that the state would be denied "the use of evidence obtained in violation of Article II, Section 10." *Gutierrez,* 116 N.M. at 444, 863 P.2d at 1065. In *Gutierrez,* a police officer sought and obtained a warrant to search the defendant's residence by unannounced entry. *Id.* at 432, 863 P.2d at 1053. The district court ruled that the unannounced entry was unlawful. *Id.* at 433, 863 P.2d at 1054. It suppressed the evidence obtained by virtue of the search. *Id.* In affirming on the basis of Article II, Section 10, our Supreme Court rejected the position, accepted in exclusionary clause jurisprudence applicable to the Fourth Amendment, that a good faith exception applies. *Gutierrez,* 116 N.M. at 446–47, 863 P.2d at 1067–68.

{11} However, this case is different from *Gutierrez* in that it does not involve the use of evidence obtained in violation of Article II, Section 10. *Gutierrez,* 116 N.M. at 444–45, 863 P.2d at 1065–66. Article II, Section 10 addresses unreasonable searches and seizures. Thus, Article II, Section 10 excludes evidence of a search or seizure that officers obtain as a result of an illegal entry. In this case, the officers' testimony that Child seeks to suppress is not the result of a search or seizure. It was not evidence about prior or ongoing illegal activity that the officers' entry enabled them to observe or of statements obtained about such illegal activity. Rather, it was evidence of Child's acts that were a new crime against the officers and distinct from those acts of the officers in entering the apartment. *See Bailey,* 691 F.2d at 1017 (distinguishing circumstance in which the defendant shoots an officer after unlawful police action from one in which an officer discovers a previous or ongoing crime that would be considered the fruits of unlawful police conduct). We do not read the exclusionary rule of *Gutierrez* to extend to such a new crime, because it would thereby, as in *Chamberlain,* give license to a person subject to an illegal entry to shoot and kill the officer making entry. Even if the officers were in a place they should not have been, and even if there is a causal connection between Child's actions and the officers' presence, Child's actions were sufficiently separate and distinct from the officers' entry that the exclusionary rule under Article II, Section 10, like the rule applicable to the Fourth Amendment, does not extend to suppress the officers' testimony about Child's acts of a new crime against the officers. *See Bailey,* 691 F.2d at 1017.

## MOOTNESS

{12} The State argues that Child's appeal is moot because this Court cannot provide Child any relief. Child has satisfactorily completed his probation and there is no appeal bond. However, even if we were inclined to agree with the State about the absence of relief, we may address otherwise moot issues on appeal that are of substantial public interest. *Mowrer v. Rusk,* 95 N.M. 48, 51, 618 P.2d 886, 889 (1980). Because of the public policy addressed in this opinion concerning the use of evidence of the crime of battery on a peace officer after an unlawful entry, we do not agree with the State that we should dismiss this appeal as moot.

## CONCLUSION

{13} We affirm the district court's denial of the motion to suppress.

{14} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, and CYNTHIA A. FRY, Judges.