# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: February 16, 2015

**NO. 32,934**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**EDWARD JAMES TAPIA SR.,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Chief Judge.**

{1}      Defendant was a backseat passenger in a vehicle which a police officer stopped without reasonable suspicion. Observing a seat belt violation, the police officer asked Defendant for identification, and Defendant thereupon allegedly concealed his identity by giving the officer a false name and committed forgery by signing the citation issued by the officer in the false name Defendant had given to the officer. The question presented in this case is whether the exclusionary rule applies to the "new" crimes of concealing identity and forgery, which were allegedly committed after the unconstitutional stop in the presence of the police officer. The district court held that the stop was unconstitutional and ordered suppression of the seat belt violation but denied suppression of the evidence of the "new" crimes. Because suppression of the evidence of these "new crimes" is consistent with the purpose of the exclusionary rule under federal law—the deterrence of unlawful police conduct—we reverse.

**BACKGROUND**

{2}      A vehicle, which had small rims that made it look like a "low rider," was stopped at a gas station. Officer Benally was parked in the median across from the gas

station and watched the vehicle leave the gas station. Shortly after it left the gas station, Officer Benally engaged her emergency lights and stopped the vehicle because the vehicle was driving forty miles per hour in a speed limit zone marked fifty-five miles per hour. This made her "suspicious" since the road was dry and mostly flat. She also testified that she stopped the vehicle because she could not read the license plate.

{3}     Upon approaching the vehicle, she could see that Defendant, who was sitting in the backseat, was not wearing his seat belt. She asked Defendant for his identification and he responded that he had none. She asked him to write down his name, date of birth, and social security number. He wrote, "Robert Tapia DOB 3/22/1968" and said he did not know his social security number. Officer Benally called the information into dispatch and asked for a description of Robert Tapia, which did not match Defendant's description. Another passenger told Officer Benally that Defendant's real name was Edward Tapia, not Robert Tapia. Officer Benally issued Defendant a no seat belt citation in the name of Robert Tapia, and Defendant signed the citation.

{4}     Defendant was arrested and charged with one count of forgery contrary to NMSA 1978, Section 30-16-10(A) (2006); one count of concealing his identity

2

contrary to NMSA 1978, Section 30-22-3 (1963); and one count of seat belt violation contrary to NMSA 1978, Section 66-7-372 (2001). Defendant filed a motion to suppress evidence, arguing that Officer Benally lacked reasonable suspicion to initiate the traffic stop and therefore all evidence seized after the stop should be suppressed. At the hearing, Officer Benally testified regarding the vehicle's slow speed and unreadable license plate. However, she failed to articulate why the slow speed made her "suspicious," could not recall whether the vehicle was impeding traffic, and admitted there was no minimum posted speed. She also failed to articulate what about the illuminated license plate made it unreadable, considering she was able to read it once the vehicle was stopped.

{5}	The district court ruled the stop was unsupported by reasonable suspicion and granted the motion to suppress with respect to the evidence of the seat belt violation. However, the district court denied the motion with respect to evidence of the forgery and concealing identity. The ruling was based on the conclusion of law that: "The crimes of concealing identity and forgery, however, had not yet been committed at the time of the stop. Evidence of those crimes did not exist at the time of the stop. Further, an unlawful stop does not justify the commission of new crimes." Defendant then entered into a plea agreement, pleading guilty to one count of forgery and

reserving the right to appeal the suppression issue as to both forgery and concealing identity. This appeal followed.

**DISCUSSION**

{6}     The district court ruled that Officer Benally lacked reasonable suspicion and therefore suppressed evidence of the seat belt violation. *See State v. Hubble*, 2009-NMSC-014, ¶ 7, 146 N.M. 70, 206 P.3d 579 ("Before a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." (internal quotation marks and citation omitted)); *see also State v. Leyva*, 2011-NMSC-009, ¶ 23, 149 N.M. 435, 250 P.3d 861 ("Reasonable suspicion must consist of more than an officer's hunch that something is amiss; it requires objectively reasonable indications of criminal activity."). The State does not challenge the ruling that the stop was unsupported by reasonable suspicion. Thus, the only issue before us is whether evidence of the additional crimes of forgery and concealing identity should also have been suppressed.

{7}     Defendant argues that suppression of this evidence was required under both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Under our interstitial approach to claims made under analogous provisions of the United States and New Mexico Constitutions, we first

4

review Defendant's federal claim under the Fourth Amendment. *See State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1 (stating that under the interstitial approach, we first examine whether the right being asserted is protected under the federal constitution).

**A.     Standard of Review**

{8}     The issue before us concerns the scope of the exclusionary rule, a legal question we review de novo. *State v. Lowe*, 2004-NMCA-054, ¶ 10, 135 N.M. 520, 90 P.3d 539 (stating that the district court's application of law to the facts is reviewed de novo); *State v. Marquart*, 1997-NMCA-090, ¶ 7, 123 N.M. 809, 945 P.2d 1027 (stating that constitutional questions are reviewed de novo). To the extent that our review entails a review of facts, we give deference to the district court's findings of fact that are supported by substantial evidence. *State v. Attaway*, 1994-NMSC-011, ¶ 5, 117 N.M. 141, 870 P.2d 103, *modified on other grounds by State v. Lopez*, 2005-NMSC-018, 138 N.M. 9, 116 P.3d 80.

**B.     The Exclusionary Rule and the New Crime Exception Under Federal Law**

{9}     Defendant argues that, because the stop of the automobile was unconstitutional, evidence of his "identity related crimes" should be suppressed pursuant to the Fourth Amendment, under the fruit of the poisonous tree doctrine. Although Defendant

concedes that there is an exception to the exclusionary rule for some new crimes committed under certain circumstances after an unconstitutional search or seizure, Defendant contends that the "new crimes" exception is not sufficiently broad to include his crimes.

{10} We begin by examining the exclusionary rule under federal law. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" *Herring v. United States*, 555 U.S. 135, 139 (2009) (alteration, internal quotation marks, and citation omitted). It is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The exclusionary rule, when applicable, forbids the use at trial of improperly obtained evidence. *Herring*, 555 U.S. at 139. After prolonged doctrinal development, *see* Potter Stewart, *The Road to Mapp v. Ohio and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search-and-Seizure Cases*, 83 Colum. L. Rev. 1365, 1372-80, (1983), the federal exclusionary rule is now understood to be a judicially-created doctrine that safeguards rights guaranteed under the Fourth Amendment through its deterrent effect on state misconduct. *Herring,* 555 U.S. at 139-41; *see also Elkins v. United States*, 364 U.S. 206, 217 (1960) ("The [exclusionary] rule is calculated to

6

prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it."). The focus of the federal exclusionary rule analysis is whether the exclusion of evidence obtained illegally would deter Fourth Amendment violations in the future; that is, whether "the benefits of deterrence . . . outweigh the [societal] costs" of excluding the evidence. *Herring*, 555 U.S. at 141; *see also State v. Gutierrez*, 1993-NMSC-062, ¶ 31, 116 N.M. 431, 863 P.2d 1052.

{11}     In this case, the district court ruled that the crimes of concealing identity and forgery had not yet been committed at the time of the unconstitutional stop and that "an unlawful stop does not justify the commission of new crimes." Thus, the district court applied what we refer to herein as the "new crime exception" to the exclusionary rule (called by some courts as the "distinct crime exception"). *See, e.g.*, *State v. Broculio*, 826 A.2d 145, 151-52 (Conn. 2003) (collecting cases that have considered and adopted a "new crime exception" to the exclusionary rule where a new crime was committed following police conduct that violated the Fourth Amendment); *People v. Brown*, 802 N.E.2d 356, 359 (Ill. App. Ct. 2003) (recognizing the existence of a "distinct-crime" exception to the exclusionary rule). The "new crime exception" provides that, under certain circumstances, evidence of a new crime

7

committed after an illegal search or seizure does not warrant suppression and may be used in court. *See* 6 Wayne R. La Fave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 11.4(j), at 483-91 (5th ed. 2012) (discussing the applicability of exclusion to evidence of crimes committed after violations of the Fourth Amendment).

{12}    Our jurisprudence has heretofore only addressed the new crime exception in situations involving violence or threats against police officer safety. *See, e.g.*, *State v. Travison B.*, 2006-NMCA-146, ¶ 9, 140 N.M. 783, 149 P.3d 99 (concluding that even if police officers entered an apartment unlawfully, evidence that the officers were attacked was admissible because the attack was "new criminal activity that is not subject to the exclusionary rule"); *State v. Jones*, 1992-NMCA-064, ¶¶ 5, 16, 18, 114 N.M. 147, 835 P.2d 863 (concluding that notwithstanding that the initial stop of the defendant was illegal, evidence that the defendant struggled with the police officer, hit him, broke from his grasp, and bolted, only to be caught by another police officer was admissible); *State v. Chamberlain*, 1989-NMCA-082, ¶¶ 2-4, 109 N.M. 173, 783 P.2d 483 (assuming that even if two police officers unlawfully remained in the defendant's home, evidence that the defendant shot at the police officers, killing one of them, was admissible); *State v. Doe*, 1978-NMSC-072, ¶¶ 10-11, 92 N.M. 100,

583 P.3d 464 (holding that "a private citizen may not use force to resist a search by an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal" because such self-help measures "can lead to violence and serious physical injury" and "[t]he societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable search"). This jurisprudence is supported by case law across the country. *See Brown v. City of Danville*, 606 S.E.2d 523, 530 (Va. Ct. App. 2004) ("[F]ederal and state courts alike have uniformly rejected the argument that trial courts should suppress evidence relating to the defendant's violence or threatened violence toward police officers subsequent to an unlawful search or seizure or a warrantless entry." (alteration, internal quotation marks, and citation omitted)); *State v. Aydelotte*, 665 P.2d 443, 447 (Wash. Ct. App. 1983) ("All courts . . . agree that evidence of post-entry assaults on police officers are outside the scope of the exclusionary rule.").

## C.  Analysis

{13}  The issue in this case is the scope of the new crime exception to the exclusionary rule.  Arguing to affirm the district court, the State maintains that under federal law, the new crime exception applies to any new crime committed, violent or

not. On the other hand, Defendant asserts that the new crime exception does not automatically apply to a non-violent, identity-related offense. Which position applies under federal law in New Mexico is an issue of first impression.

{14} The only case cited by the State in support of its position in which the new crime did not involve violence or threats against police officer safety is *United States v. Pryor*, 32 F.3d 1192 (7th Cir. 1994). In *Pryor*, the defendant drove a woman and her children to a social security office where the woman was arrested for making false statements to obtain a social security number and card. *Id.* at 1193. The agents asked the defendant, who was in the parking lot with the children, to come inside to determine if he would care for the children. *Id.* The defendant produced a driver's license and social security card falsely showing that he was "Michael Recob." *Id.* at 1194. "Michael Recob" was deceased, and the defendant had obtained the social security card by deceit, and then used it to get a driver's license because his own driver's license was suspended. *Id.* When an agent discovered that "Michael Recob" was deceased, an investigation followed, and the defendant was subsequently convicted of using a social security number which was obtained on the basis of false information. *Id.* The court rejected the defendant's argument that it was error to deny his motion to suppress the evidence that he misrepresented his identity. *Id.* at 1195-

96. The court reasoned that because the exclusionary rule was devised "to reduce incentives to violate the Constitution by preventing the prosecutors from using evidence the police turn up," and "[p]olice do not detain people hoping that they will commit new crimes in their presence[,]" applying the exclusionary rule to the case before it would not advance the policy underlying the exclusionary rule. *Id.* at 1196.

{15}    Defendant asks us to consider two cases in which it was held that the new crime exception did not apply because the new crime did not involve violence or threats against the police. The first case is *Brown*, which commenced when a police officer saw the defendant standing alone in the parking lot of a building, which was a small strip mall with a grocery store, a restaurant, and two or three other small businesses. 802 N.E.2d at 357. The defendant was standing about five or ten feet from the door of the grocery store, which was closed, and between fifteen and twenty feet from the door of the restaurant next door, which was open. *Id.* The officer "thought it was odd" for the defendant to be standing where he was, so he confronted the defendant. *Id.* (internal quotation marks omitted). The officer asked the defendant for identification, and the defendant lied by responding that he had none. *Id.* at 358. He also told the officer that his name was "Tony B. Brown" when it was actually "Antonio B. Brown." *Id.* The defendant was then arrested when the officer learned

11

there was an outstanding warrant for his arrest, and he was subsequently charged with one count of obstructing justice, one count for falsely stating he was not carrying identification, and one count for providing a false name. *Id.* The trial court found that there was no justification for stopping the defendant and ordered the defendant's answers to the police officer's questions suppressed. *Id.* On appeal, the court first reaffirmed that, in order to protect police officers from people who physically resist unconstitutional searches and seizures, evidence of a physical confrontation with a police officer is admissible notwithstanding an unconstitutional search by the police officers. *Id.* at 359-60. However, because giving false information to a police officer does not raise the same policy concerns as assaulting a police officer, the court affirmed the trial court order suppressing the evidence "as the fruit of the unconstitutional seizure." *Id.* at 360.

{16} In addition, Defendant urges us to consider *State v. Badessa*, 885 A.2d 430 (N.J. 2005) in which the New Jersey Supreme Court reversed the holding of the appellate division affirming the defendant's conviction for refusing to take a breath test (a crime under New Jersey law), notwithstanding the unconstitutional stop of the defendant's car. *Id.* at 434. The appellate division reasoned that refusing to take a breath test is comparable to a defendant resisting arrest or eluding the police, and the

exclusionary rule does not apply to resisting or eluding the police following an illegal search or detention. *Id.* at 434, 437. The New Jersey Supreme Court also stated that when a defendant committed an entirely new crime that placed police officers in physical danger following his improper detention, "the need to protect the troopers' safety outweighed whatever marginal deterrent to police misconduct might be provided by immunizing [the] defendant's actions from criminal liability." *Id.* at 437 (quoting *State v. Casimono*, 593 A.2d 827, 833 (N.J. Super. Ct. App. Div. 1991). The New Jersey Supreme Court reasoned that the commission of a new crime which endangers the safety of a police officer or endangers public safety is an "intervening act" marking the point at which the detrimental consequences of an unconstitutional seizure become so attenuated that the exclusionary rule loses its value. *Badessa*, 885 A.2d at 437; *see State v. Seymour*, 672 A.2d 1273, 1277 (N.J. Super. Ct. App. Div. 1996) (involving eluding police at high speeds following an unconstitutional stop). On the other hand, the New Jersey Supreme Court concluded that refusing to take a breath test is not comparable to a case involving the commission of a new crime that directly threatens public safety, such as resisting arrest or eluding police. *Badessa*, 885 A.2d at 437. The Court further concluded that public policy does not warrant

13

making an exception to the exclusionary rule for the crime of refusing to take a breath test and reversed the appellate division. *Id.* at 438.

{17} The authorities cited by Defendant are the most persuasive. Specifically, the policy reasons for recognizing a new crime exception to the exclusionary rule simply do not exist when a non-violent, identity-related offense is committed in response to unconstitutional police conduct. On the other hand, applying the exclusionary rule in such circumstances advances its purpose of deterring unlawful police conduct. *See State v. Garcia*, 2009-NMSC-046, ¶ 24, 147 N.M. 134, 217 P.3d 1032 ("[T]he exclusionary rule is designed to deter unlawful police conduct[.]"); *see also Elkins*, 364 U.S. at 217 ("The [exclusionary] rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it."). In this case, the identity crime was directly connected to the seat belt infraction, and the seat belt infraction was only unearthed because of the unconstitutional police conduct. Under these facts, applying the exclusionary rule serves to deter the initial unconstitutional conduct. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) ("[T]o arrest for concealing identity, there must be reasonable suspicion of some predicate, underlying crime."). Furthermore, the societal cost for excluding evidence

14

that a non-violent offense was committed to avoid a seat belt infraction appears to be minor. Because the deterrent effect outweighs the societal costs, suppression of the evidence of Defendant's new crimes is appropriate. *See Herring*, 555 U.S. at 141 (suppression is an appropriate remedy for a Fourth Amendment violation when the benefits of deterrence outweigh the costs). We hold that the commission of a non-violent, identity-related offense in response to unconstitutional police conduct does not automatically purge the taint of the unlawful police conduct under federal law.

**D.      Attenuation Analysis**

{18}      Having concluded that the taint of Officer Benally's unconstitutional stop of the vehicle was not automatically purged by the new offenses, we must still determine whether the exclusionary rule otherwise applies. To answer this question, we employ the traditional attenuation analysis. Although the exclusionary rule "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search," *Murray v. United States*, 487 U.S. 533, 536-37 (1988), it does not apply when the connection between the unconstitutional police action and the evidence becomes "so attenuated as to dissipate the taint" from the unlawful conduct. *Nardone v. United States*, 308 U.S. 338, 341 (1939); *see State v. Portillo*, 2011-

15

NMCA-079, ¶ 25, 150 N.M. 187, 258 P.3d 466 ("It is established law that evidence discovered as a result of the exploitation of an illegal seizure must be suppressed unless it has been purged of its primary taint."); *State v. Soto*, 2008-NMCA-032, ¶ 25, 143 N.M. 631, 179 P.3d 1239 (noting that because the purpose of the exclusionary rule is to deter unlawful police conduct, if the acquisition of evidence is sufficiently removed from the unlawful police conduct, "the deterrent value of excluding it is diminished." (quoting *People v. Mitchell*, 824 N.E.2d 642, 649 (Ill. App. Ct. 2005)).

{19} The United States Supreme Court has articulated three factors for assessing attenuation between the unconstitutional police conduct and the evidence offered by the State: "(1) the amount of time that elapsed between the illegality and the acquisition of evidence; (2) any intervening circumstances; and (3) the purpose and the flagrancy of the police misconduct." *Soto*, 2008-NMCA-032, ¶ 25 (internal quotation marks and citation omitted). "This last factor is especially important, because the aim of the exclusionary rule is to deter police misconduct by removing the incentive to disregard constitutional guarantees." *State v. Bale*, 267 N.W.2d 730, 733 (Minn. 1978). We conclude that the discovery of the evidence of concealing identity and forgery was not sufficiently removed from the taint of the illegal stop to justify admitting the evidence notwithstanding the exclusionary rule. "It is well

established that the initiation of a traffic stop constitutes a seizure of the vehicle's occupants." *Portillo*, 2011-NMCA-079, ¶ 12. Evidence of the new crimes flowed directly from observing an alleged seat belt violation during the unlawful seizure, and Defendant concealed his identity and signed the citation issued in his brother's name directly in response to questions about not wearing his seat belt during the seizure. Finally, the fact that evidence of Defendant's seat belt violation was suppressed further reinforces the connection between the unlawful stop and the evidence of the new crimes. Stated another way, there was a clear link between the unconstitutional seizure and the questions that led to the concealing identity and forgery charges. We conclude that these facts favor suppression in deterring stops of vehicles where there is no reasonable suspicion to do so.

**D.    Defendant's State Constitution Challenge**

{20}    Having concluded that the crimes of concealing identity and forgery should have been suppressed under the Fourth Amendment, we do not address Defendant's challenge under Article II, Section 10 of the New Mexico Constitution. *See Gomez*, 1997-NMSC-006, ¶ 19 (stating that under the interstitial approach, if the right being asserted is protected under the federal constitution, the state constitutional claim is not reached).

**CONCLUSION**

{21}     The order of the district court denying Defendant's motion to suppress is reversed, and the case is remanded to the district court for further proceedings consistent with this Opinion.

{22}     **IT IS SO ORDERED.**


_____

**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**


_____

**M. MONICA ZAMORA, Judge**