This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                                                    **No. 35,176**

**JESSICA BROWN**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina T. Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett PC
Linda Helen Bennett
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Chief Judge.**

{1}     Defendant appeals from the district court's judgment, sentence, and commitment, entered following a jury trial, convicting her of one count of battery

upon a peace officer, and one count of resisting, evading, or obstructing an officer. This Court issued a notice proposing summary affirmance. Defendant filed a memorandum in opposition to this Court's notice of proposed disposition, which we have duly considered. Remaining unpersuaded, we affirm.

{2}	Defendant raised six issues in her docketing statement: (1) whether the district court erred in denying her motion to dismiss or suppress, based on an illegal warrantless entry; (2) whether the district court erred in denying her motion to dismiss, based on *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329; (3) whether the district court erred in failing to sanction the State for discovery violations; (4) whether the district court erred in denying her request for an instruction on entrapment; (5) whether the evidence was sufficient to support the guilty verdicts; and (6) whether Defendant received ineffective assistance of counsel when her defense attorney was not notified until the sentencing hearing that Defendant was subject to a mandatory habitual offender enhancement. [CN 2]

{3}	We initially note that Defendant, in her memorandum in opposition, specifically declined to address our proposed disposition as to issues 2, 3, 5, and 6. [*See* MIO 10] Accordingly, these issues are deemed abandoned. *See State v. Johnson*, 1988-NMCA-029, ¶ 8, 107 N.M. 356, 758 P.2d 306 (stating that when a case is decided on the summary calendar, an issue is deemed abandoned where a party fails to respond to the

proposed disposition of the issue); *cf. Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

{4}     With respect to Defendant's first issue—that the district court erred in denying her motion to dismiss or suppress—we initially proposed to conclude in our calendar notice, based on the facts before us, that Defendant was correct in her assertion that Albuquerque Police Officer Daniel Sanchez's (Officer Sanchez) warrantless entry into her home was unlawful. [CN 4] *See State v. Ryon*, 2005-NMSC-005, ¶ 23, 137 N.M. 174, 108 P.3d 1032 ("Warrantless searches and seizures inside a home are presumptively unreasonable, subject only to a few specific, narrowly defined exceptions."). Specifically, we suggested that it did not appear that the State sufficiently proved that Officer Sanchez reasonably believed that Defendant's child was in need of immediate aid to protect or preserve life or limb, especially in light of the fact that the child had already been taken inside by his mother, and that the State, at most, proved that Officer Sanchez was concerned about the child's safety and health. [CN 5] On these facts, we proposed to conclude that the officer's warrantless entry was not justified by the emergency assistance doctrine. [CN 5] *See Ryon*, 2005-NMSC-005, ¶¶ 27, 29 (requiring the State to prove three elements to justify an

4

emergency assistance entry: (1) the officer "reasonably believed that a person within was in need of immediate aid to protect or preserve life or avoid serious injury"; (2) the officer's motivation for the initial decision to enter the home is to render protection of human life or property in imminent danger and not to perform a criminal investigation; and (3) the police did not expand the scope of the intrusion beyond what is necessary to address the emergency).

{5}     However, although we suggested in our calendar notice that the emergency assistance doctrine did not apply, we noted that our proposed conclusion appeared to be of no moment to Defendant, at least insofar as her convictions for battery upon a peace officer and resisting arrest were concerned. [CN 5] That is, our jurisprudence has rejected the argument that trial courts should suppress evidence relating to a defendant's violence or threatened violence toward police officers subsequent to an unlawful search or seizure or a warrantless entry. *State v. Tapia*, 2015-NMCA-055, ¶ 12, 348 P.3d 1050, *cert. granted*, 2015-NMCERT-005; *see also, e.g., State v. Travison B.*, 2006-NMCA-146, ¶ 9, 140 N.M. 783, 149 P.3d 99 (concluding that even if police officers entered an apartment unlawfully, evidence that the officers were attacked was admissible because the attack was "new criminal activity that is not subject to the exclusionary rule"); *State v. Jones*, 1992-NMCA-064, ¶¶ 5, 16, 18, 114 N.M. 147, 835 P.2d 863 (concluding that notwithstanding that the initial stop of the

defendant was illegal, evidence that the defendant struggled with the police officer, hit him, broke from his grasp, and bolted, only to be caught by another police officer was admissible); *State v. Chamberlain*, 1989-NMCA-082, ¶¶ 2-4, 109 N.M. 173, 783 P.2d 483 (assuming that even if two police officers unlawfully remained in the defendant's home, evidence that the defendant shot at the police officers, killing one of them, was admissible). According to *Tapia*, this jurisprudence is supported by case law across the country. 2015-NMCA-055, ¶ 12. Therefore, we suggested in our calendar notice that we could find no error in the district court's failure to suppress evidence regarding Defendant's new criminal activity; namely, her alleged crimes of battery upon a peace officer and resisting arrest. [CN 6]

{6}     In her memorandum in opposition, Defendant does not clearly point out errors in fact or law in our calendar notice. Not surprisingly, Defendant agrees with our proposed conclusion that Officer Sanchez's entry into her home was not justified by the emergency assistance doctrine. [MIO 3] Notably, however, aside from asserting that our new criminal activity jurisprudence "defies common sense" and arguing that fairness and public policy require a different outcome, Defendant has not provided authority to convince us that our proposed disposition is incorrect. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where a party cites no authority to support an argument, we may assume no such authority

exists). To the contrary, as our Supreme Court recognized in *State v. Doe*, 1978-NMSC-072, ¶ 10, 92 N.M. 100, 583 P.2d 464, "[s]elf-help measures undertaken by a potential defendant who objects to the legality of the search can lead to violence and serious physical injury. The societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable search." Thus, we find Defendant's fairness and public policy arguments unavailing.

{7}     Defendant also appears to argue that Officer Sanchez was not "lawfully about the business of law enforcement or community care-taking after he entered [Defendant's] home." [MIO 3] In *Doe*, the Court held that a police officer is engaged in the performance of his official duties if he is simply "acting within the scope of what [he was] employed to do[,]" as opposed to engaging in a "personal frolic[.]" 1978-NMSC-072, ¶ 14. There is no argument, nor is there any indication, that Officer Sanchez was on a personal frolic when he climbed a ladder to rescue Defendant's three-year-old son from the roof of her house, when he followed Defendant into the second-story window to check on the health of the child, or when he expressed his desire to see the child's room after smelling a strong odor in Defendant's house. Instead, it appears that he was acting within the scope of what he was employed to do. Consequently, we remain convinced that while Officer Sanchez's initial warrantless

entry into Defendant's home was unlawful, evidence of Defendant's new crimes—battery upon a peace officer and resisting arrest—was properly not suppressed by the district court. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the appellate court will affirm the district court's decision if it is right for any reason, so long as it is not unfair to the appellant).

{8}    Defendant's final issue hinges on her contention that Officer Sanchez's actions entrapped her into committing the offenses and that the jury should have been instructed on subjective entrapment, UJI 14-5160 NMRA, and objective entrapment, UJI 14-5161 NMRA. [MIO 4] In our calendar notice, we pointed out that to the extent Defendant was arguing entrapment on the charge of battery upon a peace officer, we were not convinced that the district court erred in refusing to instruct the jury on Defendant's entrapment defense, given the fact that it appears that she denied committing the offense. [CN 10] *See State v. Rodriguez*, 1988-NMCA-069, ¶ 23, 107 N.M. 611, 762 P.2d 898 (stating that the defense of entrapment "is not available to a defendant who denies committing the offense, because its invocation necessarily assumes the commission of at least some elements of the offense"). In her memorandum in opposition, Defendant responds to our concern by citing to *Poore v. State*, 1980-NMSC-035, 94 N.M. 172, 608 P.2d 148, for the proposition that "when considering the propriety of a jury instruction, the evidence must be examined in favor

8

of the defendant, to whom the instruction might be of any benefit under any reasonable hypothesis." [MIO 9] While this may be true, *Poore* is inapposite to the question of whether an entrapment defense is available to a defendant who denies committing the offense. Thus, we are not convinced that our suggestion was incorrect, and we will therefore review Defendant's entrapment argument solely with respect to her conviction for resisting arrest.

**{9}**      According to Defendant, she submitted UJI 14-5160 to the district court, but the instruction was denied. [MIO 4; *see* RP 96] This instruction applies to subjective entrapment. UJI 14-5160, comm. cmt. Subjective entrapment—unfair inducement where the defendant is not predisposed—occurs "when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *State v. Vallejos*, 1997-NMSC-040, ¶ 5, 123 N.M. 739, 945 P.2d 957. Here, in order for the instruction to apply, the criminal design—resisting arrest—would have had to have originated with Officer Sanchez. Similarly, the disposition to commit the crime of resisting arrest would have had to have been implanted in Defendant's mind and induced by Officer Sanchez for the purpose of prosecuting her for that crime. There is notably no evidence in the record to support this; instead, Defendant argues that Officer Sanchez entered her house

without a warrant, followed her throughout the house demanding that she permit him to search it, escalated the encounter until she began to weep, and aroused her fear and anger to the point that she "resisted his efforts to restrain her so that he could conduct an illegal search." [MIO 5] Although we view the evidence in the light most favorable to the giving of a defendant's requested instruction, *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355, we are not persuaded that Officer Sanchez attempted to handcuff Defendant for the purpose of ultimately prosecuting her for resisting arrest. Rather, it appears that his actions were taken for the purpose of searching Defendant's home. Consequently, we are not convinced that the district court erred in refusing to give Defendant's subjective entrapment instruction. *Cf. State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69 (stating that a defendant is entitled to jury instructions on his or her theory of the case if there is evidence to support the instruction).

{10}    Defendant also tendered an instruction on objective entrapment, UJI 14-5161, which was refused by the district court. [MIO 5; *see* RP 97] The thrust of Defendant's memorandum in opposition is directed at the normative component of objective entrapment, which is whether, as a matter of law, the "police conduct exceeded the standards of proper investigation[.]" *Vallejos*, 1997-NMSC-040, ¶ 11. [*See generally* MIO 5-8] The focus of the normative inquiry is on the standards of proper

investigative conduct, particularly prohibiting investigative activity that employs unconscionable methods or advances illegitimate purposes. *Id.* ¶¶ 12, 16-18. Under the normative component,

> the district court must carefully scrutinize both the methods and purposes of police conduct to determine whether police tactics offend our notions of fundamental fairness, or are so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.

*State v. Shirley*, 2007-NMCA-137, ¶ 17, 142 N.M. 765, 170 P.3d 1003 (alteration, internal quotation marks, and citation omitted).

{11} We note that neither the submitted instruction nor Defendant's memorandum in opposition appear to assert that Officer Sanchez's investigative activity advanced an illegal purpose; rather, they concentrate on the methods used. With respect to unconscionable methods, *Vallejos* provides a list of helpful "indicia of unconscionability[,]" which, in relevant part, includes

> coaxing a defendant into a circular transaction, . . . an extreme plea of desperate illness, an appeal based primarily on sympathy or friendship, . . . persistent solicitation to overcome a defendant's demonstrated hesitancy, the use of brutality or physical or psychological coercion to induce the commission of a crime, . . . unjustified intrusion into citizens' privacy and autonomy, . . . excessive involvement by the police in creating the crime, [and] the manufacture of a crime from whole cloth[.]

1997-NMSC-040, ¶ 18 (alteration, internal quotation marks, and citations omitted).

{12} A finding of normative entrapment is "an extreme remedy for extreme

11

government behavior." *Id.* ¶ 20. A determination of objective entrapment should be "reserved for only the most egregious circumstances[.]" *Id.* ¶¶ 21-22 (internal quotation marks and citation omitted). On appeal, we review de novo the application of normative standards of objective entrapment. *In re Alberto L.*, 2002-NMCA-107, ¶ 15, 133 N.M. 1, 57 P.3d 555.

{13} Here, Defendant argues that Officer Sanchez's actions in unlawfully entering her home unannounced and without authority, berating her in front of her children for the conditions of her home, demanding permission to search the home, ignoring her instructions to leave, and announcing an intention to search regardless of her refusal, "shock the conscience" and amount to "outrageous government conduct." [MIO 6-8] Keeping in mind our Supreme Court's admonition that objective entrapment should be reserved for only the most egregious circumstances, *Vallejos*, 1997-NMSC-040, ¶¶ 21-22, we are not convinced that the facts of this case rise to that level. Specifically, although Officer Sanchez was not acting as a community caretaker for purposes of his warrantless entry into Defendant's home, his initial actions demonstrate a concern for the three-year-old child he observed standing on the second-story roof—a concern that intensified when he entered the home and observed, through sight and smell, the conditions of the home. We are not prepared to say that Officer Sanchez's actions in requesting to view the child's room and his subsequent

12

conduct with respect to Defendant, including attempting to handcuff her, were so extreme as to warrant a determination that the "police conduct exceeded the standards of proper investigation[.]" *Vallejos*, 1997-NMSC-040, ¶ 11. Consequently, we are not convinced that the district court erred in refusing to give Defendant's instruction on objective entrapment.

{14}    Accordingly, for the reasons stated in this Opinion, as well as those provided in our notice of proposed disposition, we affirm.

{15}    **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Chief Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**STEPHEN G. FRENCH, Judge**