THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* TRACY SANTANA, Defendant-Appellee.

Second District   No. 82—1017

Opinion filed January 27, 1984.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara Preiner, Assistant State's Attorney, of counsel), for the People.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Eugene A. Wojcik, Jr., Assistant Public Defender, of counsel), for appellee.

JUSTICE NASH delivered the opinion of the court:

The State appeals from an order of the circuit court of Du Page County granting a motion by defendant, Tracy Santana, to quash his arrest and suppress all evidence of his conduct after the warrantless entry of defendant's apartment by police officers.

Defendant was arrested on June 26, 1982, and charged with the offenses of resisting a peace officer (Ill. Rev. Stat. 1981, ch. 38, par. 31—1) and battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—3). He filed a motion to quash his arrest and suppress "all statements and reports of gestures and responses by defendant during the detention which followed the arrest" together with all other "knowledge and the fruit thereof which is the direct or indirect product of the arrest." After a hearing, the trial court granted defendant's motion and the State appeals, pursuant to Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)), after filing its certificate of impairment.

Officers William Andrewski and Edward Krause and Sergeant Carl Schnibben of the village of Woodridge police department testified that at 2:50 a.m. on June 26, 1982, they received a radio dispatch advising there was a domestic disturbance with a woman hurt and a possible weapon involved at 8111 Route 53, apartment 24. The officers, who were in uniform, went to the third floor of the building at that address and learned there was no apartment 24. They then called the dispatcher by radio for confirmation, subsequently learning the correct apartment number was 21 and that the call had come from that apartment. While waiting for the dispatcher's call, the officers heard sounds of a dish breaking, a baby crying and an argument coming from apartment 21. Officer Andrewski approached the door of the apartment and noticed damage to its frame, as though a locked door had been kicked in. Sergeant Schnibben testified he observed a footprint on the door. The officers then knocked on the door and twice announced they were police officers.

Defendant opened the door of his apartment and Sergeant Schnibben inquired whether there was a problem. The officers described defendant as looking wild-eyed and extremely agitated and they noticed blood on his hand and on the face and blouse of a woman behind him who appeared to have been crying; defendant then slammed the door shut. Sergeant Schnibben thereupon kicked the door open and the officers entered the apartment. Defendant shouted obscenities at Sergeant Schnibben and spit in his face. A scuffle ensued between defendant and the sergeant and, with the assistance of another officer, defendant was handcuffed and placed under arrest for battery and resisting a peace officer.

Officers Krause and Andrewski testified further that on entering the apartment they observed an altercation between defendant and Sergeant Schnibben; they announced the police were there to check out a domestic disturbance and wanted to make sure the woman was alright. A woman with blood on her face and blouse stated there was no problem. The officers also observed a man sitting on the couch and a small child.

Defendant testified at the suppression hearing that he and his wife, Debbie Santana, were having a family discussion before the officers arrived which he said was loud, but should not have bothered anyone. He responded to a knock on the door and saw police officers who requested admission to the apartment. Defendant testified both he and his wife, who was standing behind him, told the officers "no" and he closed the door. As he was leaving the door, it was kicked open and officers threw him into the hallway and handcuffed him. Defendant also testified he had cut his hand at work and it had reopened that night.

Debbie Santana testified that she and her husband were having an argument during which there had been loud talking, but no yelling or screaming. She was behind her husband when he answered the door and both told the officers they could not enter. When the officers did enter, she told them there was no problem and asked them to leave. Mrs. Santana also stated a plate had dropped out of the refrigerator and broke upon the floor shortly before the officers entered.

Paula Dirks, a neighbor called as a witness by defendant, testified she watched the officers in the hall through a peep hole in her door. She heard a glass break in defendant's apartment, the officer knock and announce they were police and the slam of a door. One of the officers then kicked in the door and she heard the police yelling and Mrs. Santana repeating "leave us alone" and "get out of here."

It was undisputed that at the time they entered defendant's apartment the officers had neither an arrest or search warrant and that no one had consented to the entry. The trial court determined defendant's arrest was illegal, as the officers lacked probable cause, and suppressed all evidence relating to defendant's conduct after the officers entered the apartment.

We cannot determine from the ruling of the trial court whether it found the officers lacked probable cause prior to their entry of defendant's apartment or whether that finding was directed to the circumstances existing after they had forced open the door and entered. In either event, we conclude the trial court erred and that its judgment must be reversed.

Section 107—2(c) of the Code of Criminal Procedure provides:

> "A peace officer may arrest a person when * * * [h]e has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1981, ch. 38, par. 107—2(c).)

(*People v. Phillips* (1964), 30 Ill. 2d 158, 160, 195 N.E.2d 717.) Section 107—5(d) of the Code provides:

> "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest." (Ill. Rev. Stat. 1981, ch. 38, par. 107—5(d).)

Entry into a private dwelling to make an arrest without a warrant, however, is justified only in exigent circumstances. (*Payton v. New York* (1980), 445 U.S. 573, 583, 63 L. Ed. 2d 639, 648-49, 100 S. Ct. 1371, 1378; *People v. Abney* (1980), 81 Ill. 2d 159, 168, 407 N.E.2d 543; *People v. Olson* (1983), 112 Ill. App. 3d 20, 23, 444 N.E.2d 1147.) Factors which suggest exigent circumstances include (1) the need for prompt action; (2) the absence of deliberate or unjustified delay by officers during which a warrant could have been obtained; and (3) a belief the suspect was armed and exhibited signs of a violent character. Other factors which suggest the officers acted reasonably include (1) existence of a clear showing of probable cause based upon reasonably trustworthy information; (2) the defendant was clearly identified; (3) a strong reason to believe the defendant was on the premises; and (4) the entry was peaceful. (*People v. Abney* (1980), 81 Ill. 2d 159, 169-73, 407 N.E.2d 543.) A further factor constituting an exigent circumstance justifying warrantless entry of a dwelling to effect an arrest is present where officers reasonably believe a felony is being committed in their presence. *People v. Eichelberger* (1982), 91 Ill. 2d 359, 369, 438 N.E.2d 140.

Reasonable grounds, or probable cause, to arrest exists when the facts and circumstances known to the arresting officer at the time the arrest is made are sufficient to warrant a man of reasonable caution to believe an offense has been committed, or is being committed, and that the person arrested committed it. (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564.) In *People v. Clay* (1973), 55 Ill. 2d 501, 504-05, 304 N.E.2d 280, the court stated,

> "Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to

be unduly technical. These probabilities are the factual and practical considerations of every day life on which reasonable men, not legal technicians, act."

The officers in this case responded to a late-night call to the police department reporting that a domestic quarrel was occurring in an apartment in which a woman had been injured and that a weapon may be involved. When they arrived at the scene the officers learned there was an error in the apartment number and sought verification from the police dispatcher. When they heard the sounds of argument and a dish breaking in defendant's apartment, the officers approached the door and noticed it had been damaged as though by forcible entry. The officers knocked on the door and, when defendant opened it, inquired whether there was a problem; they saw that defendant was agitated and had blood on his hand and the woman behind him had blood on her face and blouse. Defendant then slammed the door shut. Defendant does not controvert these facts, but states that as he and his wife had told the officers they could not enter, the entry was unlawful.

We conclude from these facts the officers had reasonable grounds to believe a crime had been committed, or was being committed, in defendant's apartment and that he was involved in doing so. For the same reasons, we find exigent circumstances existed authorizing the officers to enter the apartment for purposes of arrest. The officers could reasonably believe a serious offense was in progress; they had been advised a woman had been injured with a weapon possibly involved and prompt action was clearly demanded of them. Defendant's brief appearance before slamming the door suggested a violent character, particularly in view of the blood on both defendant and the woman. We find that each of earlier noted factors indicative of exigent circumstances was present together with all of the factors tending to show the officers acted reasonably, except that the entry was not peaceful.

Nor would the circumstances confronting the officers be changed in the event the trial court considered creditable the testimony of defendant and his wife they had responded "no" to the inquiry whether there was a problem. The officers could not know who they were or whether they were lawfully present in the apartment. Defendant did not identify himself or make any effort to reassure the officers their protective services were not needed by someone in the apartment. While Justice Clark did not agree with the majority opinion in *People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140, in his dissent he noted, "A police officer is not required under the fourth

amendment to delay action where there is a danger to the officer's or another's safety." (91 Ill. 2d 359, 374). We consider that comment to be appropriate to the circumstances with which the officers were confronted in this case. Compare *People v. Olson* (1983), 112 Ill. App. 3d 20, 24, 444 N.E.2d 1147; *People v. Klimek* (1981), 101 Ill. App. 3d 1, 5-6, 427 N.E.2d 598.

Defendant was neither arrested nor charged for any of the possible offenses which caused the officers to enter his apartment. After they entered, however, there was evidence presented that defendant spit in an officer's face and scuffled with him. That was clearly sufficient to establish probable cause for defendant's arrest for battery and resisting a peace officer, and the trial court's finding to the contrary was against the manifest weight of the evidence and must be reversed. See *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.

Even had the officers' entry to defendant's apartment been deemed unlawful, the suppression of the evidence of defendant's conduct in the apartment which forms the basis for the charges of resisting arrest and battery would be erroneous. It is well established that the exclusionary rule will not be extended to cause suppression of evidence of a defendant's own unlawful conduct in response to police conduct which was in violation of the fourth amendment. *People v. Abrams* (1971), 48 Ill. 2d 446, 271 N.E.2d 37; *People v. Klimek* (1981), 101 Ill. App. 3d 1, 7, 427 N.E.2d 598.

Accordingly, the judgment of the circuit court is reversed and this cause remanded for further proceedings consistent with our opinion and before another judge.

Reversed and remanded.

HOPF and REINHARD, JJ., concur.