# Illinois Official Reports

## Appellate Court

---

### *People v. Jones*, 2015 IL App (2d) 130387

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DeANDREA JONES, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0387 |
| Filed<br>Rehearing denied | March 17, 2015<br>July 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Carroll County, No. 12-CF-72; the Hon. Val Gunnarsson, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Scott L. Brinkmeier, State's Attorney, of Mt. Carroll (Lawrence M. Bauer and Barry W. Jacobs, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.

Justices Hudson and Birkett concurred in the judgment and opinion.


**OPINION**

¶ 1    Following a jury trial, defendant, DeAndrea Jones, was convicted of aggravated battery to a peace officer (720 ILCS 5/12-4(b)(18) (West 2010)) and obstructing a peace officer (720 ILCS 5/31-1(a) (West 2010)). The trial court sentenced him to five years' imprisonment. He appeals, contending that the State failed to prove beyond a reasonable doubt that the officer was engaged in an authorized act, as required for a conviction of obstructing. We affirm in part and reverse in part.

¶ 2    Defendant was charged with aggravated battery and obstructing. He was also charged with domestic battery by making contact of an insulting or provoking nature with Susanne Guzman. That charge was severed before trial and is not at issue here.

¶ 3    At trial, Phillip Small testified that on December 16, 2013, he was on his front porch when he saw a man get dropped off at a house across the street. The man, defendant, who appeared to have been drinking, crawled up the stairs. Small heard a man and a woman arguing and "stuff breaking." This argument lasted three or four minutes. Small then called the police.

¶ 4    Savanna police officer John Loechel testified that he responded to a report of a "physical domestic." He saw Small standing in the doorway of his house. Small pointed across the street, where Loechel saw defendant and Guzman on the porch arguing. The porch was enclosed, with several windows and a screen door. Loechel knocked on the door and identified himself as a police officer. He opened the door, announced that he was there to investigate a domestic disturbance, and asked what the problem was. Defendant informed Loechel that there was no problem.

¶ 5    Loechel told defendant that there would not be arguing if there were no problem. He asked defendant to step outside to discuss the situation, but defendant refused. In response to several such requests, defendant asserted that it was his house and that Loechel needed to leave. Defendant continued swearing at Loechel.

¶ 6    Loechel testified that he was concerned about the safety of all involved at that point. He could smell alcohol coming from both parties, and he did not know whether anyone else was inside the house.

¶ 7    Defendant then started walking back toward the main door of the house. Loechel grabbed his arm and tried to arrest him. Defendant started pushing and pulling away, so Loechel took him to the ground. Defendant began to kick the officer repeatedly. Loechel told him to stop resisting and that he was under arrest for resisting.

¶ 8    At some point, Guzman ran over, yelling at Loechel to get off of defendant and pushing him. Loechel grabbed her arm and took her down also. He then pushed defendant out through the porch door. Outside in the yard the struggle continued, with Loechel trying to get defendant into handcuffs. Defendant tried to get Loechel into a headlock. Loechel got loose and drew his firearm, then backed away to catch his breath. Defendant continued swearing at him and started to walk back toward the house. Loechel holstered his firearm and followed defendant back toward the house. Additional officers eventually arrived to help with the arrest. Deputy Koepping tased defendant twice and he was eventually taken into custody.

¶ 9    The jury found defendant guilty on both counts and the trial court sentenced him to five years' imprisonment. Defendant timely appeals.

¶ 10    Defendant contends that the State did not prove him guilty beyond a reasonable doubt of obstructing. He notes that a conviction of obstructing requires that the officer be engaged in an "authorized act" within his official capacity. 720 ILCS 5/31-1(a) (West 2010). He contends that, once he assured Loechel that there was no problem and asked him to leave, and where Guzman neither exhibited injuries nor requested assistance, Loechel's investigation was finished and his remaining in defendant's home was unauthorized. We agree.

¶ 11    Defendant was convicted of violating section 31-1 of the Criminal Code of 1961, which provides that one who "knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2010). Generally, "authorized act" means simply an act of a type that an officer is authorized to perform. See *People v. Pickett*, 34 Ill. App. 3d 590, 597 (1975). Where the authorized act is an arrest, the inquiry usually ends because a defendant is not privileged to resist even an unlawful arrest. *City of Champaign v. Torres*, 214 Ill. 2d 234, 241-42 (2005) (citing 720 ILCS 5/7-7 (West 2002)). Where, however, the officer's act is the entry into (or remaining within) the defendant's home, section 7-7 does not apply. *Id.* at 243. Thus, an officer's entry into the defendant's home in violation of the fourth amendment is not an "authorized act" for purposes of section 31-1 (*id.* (citing *People v. Swiercz*, 104 Ill. App. 3d 733, 736-37 (1982))), even if the entry is undertaken pursuant to an official investigation (*id*. at 243-44 (citing *People v. Hilgenberg*, 223 Ill. App. 3d 286, 294 (1991))).

¶ 12    Here, the act that defendant was charged with obstructing was Loechel's entry onto (or remaining on) defendant's porch. If Loechel's conduct violated the fourth amendment, it was unauthorized and defendant could not be convicted of obstructing it. Thus, we consider whether Loechel's entry onto the porch and remaining there to continue his investigation were permitted by the fourth amendment.

¶ 13    The fourth amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The chief evil against which the fourth amendment is directed is physical entry into the home. *Payton v. New York*, 445 U.S. 573, 585 (1980); *People v. Wear*, 229 Ill. 2d 545, 562 (2008). The fourth amendment generally prohibits the police from entering a private residence without a warrant. *People v. Foskey*, 136 Ill. 2d 66, 74 (1990). Indeed, the fourth amendment "has drawn a firm line at the entrance to the house." *Payton*, 445 U.S. at 590. Accordingly, absent exigent circumstances, the police may not enter a private residence to make a warrantless search or arrest. *Id.*; *People v. Davis*, 398 Ill. App. 3d 940, 948 (2010). The State

bears the burden of demonstrating exigent circumstances necessitating a warrantless search or arrest. *Foskey*, 136 Ill. 2d at 75.

¶ 14 Defendant essentially concedes that Loechel's initial entry onto the porch was authorized. Loechel had just received a credible report of a loud argument, including the sound of things breaking, at defendant's residence. Loechel saw two people arguing on the porch as he approached the house. Defendant appeared extremely intoxicated and belligerent. Thus, Loechel was authorized to at least step onto the porch to see whether Guzman was injured or needed assistance. See *Sneed v. Howell*, 306 Ill. App. 3d 1149, 1159 (1999) (Illinois Domestic Violence Act of 1986 (750 ILCS 60/305 (West 1994)) puts an affirmative duty on the police to respond to and investigate complaints); see also 750 ILCS 60/304(a) (West 2010).

¶ 15 Defendant contends, however, that once defendant assured Loechel that there was "no problem," Loechel observed that Guzman was not visibly injured, and she did not request his assistance, he was obligated to respect defendant's request that he leave the premises. We agree.

¶ 16 While Loechel was undoubtedly authorized to conduct some initial investigation, in doing so he found no evidence of domestic violence, or of any other offense for that matter. The report that prompted the investigation stated only that a verbal argument was occurring, accompanied by the sound of objects breaking. Loechel, too, heard arguing and things breaking, but, even after entering defendant's home, he discovered no evidence of violence. Guzman, the ostensible victim, had no visible injuries and did not request assistance. Loechel's authority to remain in defendant's home effectively ended at that point. His remaining in the home in an attempt to detain defendant was an unauthorized act that defendant could obstruct. See *City of Champaign*, 214 Ill. 2d at 243-44 (where a police officer is not trying to make an arrest, owner would not be prohibited from using reasonable force to prevent the officer from making an unconstitutional entry into his or her apartment).

¶ 17 This case is unlike *People v. Santana*, 121 Ill. App. 3d 265 (1984). There, officers responded to a late-night call reporting that a domestic quarrel was occurring in an apartment, that a woman had been injured, and that a weapon might be involved. When they heard the sounds of argument and a dish breaking in the defendant's apartment, the officers approached the door and noticed that it had been damaged as though by forcible entry. They knocked on the door and, when the defendant opened it, inquired whether there was a problem; they saw that the defendant was agitated and had blood on his hand and that the woman behind him had blood on her face and blouse. The defendant then slammed the door shut. *Id.* at 266. The officers entered the apartment. On appeal, the defendant argued that, because he and the woman had told the officers that they could not enter, the entry was unlawful. We rejected the defendant's argument, concluding that the officers had reasonable grounds to believe that a crime was being committed and that the defendant was involved. *Id.* at 269. Moreover, we held that exigent circumstances authorized the warrantless entry. *Id.* at 268-70.

¶ 18 In *Santana*, the door was broken and both parties had blood on them. No such facts were present here, as both parties appeared uninjured. We thus reverse defendant's conviction of obstructing a peace officer.

¶ 19 We note, however, that defendant's argument applies only to his conviction of obstructing. Defendant was also convicted of aggravated battery to a peace officer, which requires only that the officer be performing his official duties (see 720 ILCS 5/12-4(b)(18) (West 2010)). He argues perfunctorily that, because Loechel was not performing an authorized act, he was not

performing his official duties either. Defendant cites no authority for this argument, and it is thus forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *People v. Ward*, 215 Ill. 2d 317, 332 (2005) (point raised in brief but not supported by relevant authority is forfeited).

¶ 20 Defendant next contends that the trial court should have *sua sponte* instructed the jury on self-defense as a defense to aggravated battery. Defendant acknowledges that he forfeited this contention by failing to raise it in a posttrial motion. See *People v. Sargent*, 239 Ill. 2d 166, 188-89 (2010). He thus argues that we should invoke the plain-error exception to the forfeiture rule. See Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013).

¶ 21 The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error where either: (1) a clear or obvious error occurs and the evidence is so closely balanced that such error threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error; or (2) a clear or obvious error occurs and is so serious that it affects the fairness of the defendant's trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). In both instances, the burden of persuasion remains on the defendant. *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 22 Consistent with the plain-error rule, Rule 451(c) provides that, where a jury instruction suffers from a substantial defect, claims of error are not subject to forfeiture on appeal. The erroneous omission of an instruction constitutes a substantial defect, or plain error, when the omission created a serious risk that the defendant was incorrectly convicted because the jury did not understand the applicable law, so as to threaten the fundamental fairness of the defendant's trial. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004).

¶ 23 Defendant acknowledges the rules that one may not resist even an unlawful arrest (see 720 ILCS 5/7-7 (West 2010)) and that an officer may generally use any force that he reasonably believes necessary to effect an arrest (see 720 ILCS 5/7-5(a) (West 2010)). Defendant argues that these rules do not apply where an officer uses excessive force to effect an arrest. However, he points to no evidence of excessive force by Loechel.

¶ 24 Defendant cites evidence that Loechel grabbed his arm and twisted it. Then, when defendant continued to pull away from him, Loechel took him to the ground. Defendant fails to explain how the arrest could have been accomplished with a lesser degree of force.

¶ 25 *People v. Sims*, 374 Ill. App. 3d 427 (2007), on which defendant relies, is plainly distinguishable. There, evidence showed that the defendant generally cooperated with the officers until, after being arrested and placed in a squad car, his girlfriend, holding their baby, approached the car and began talking to the defendant. They got into an argument and an officer either told her to back away (according to the officer) or " 'nudged' " her (according to the defendant). *Id.* at 429-30. In any event, the defendant became upset and began banging on the window of the squad car. The officers then removed the defendant from the car. The defendant testified that the officers threw him face-first to the ground, placed a knee or elbow against his neck, and threw him into the back of the car, where an officer began hitting him in the ribs. He added that he was again dragged out of the car and " 'roughed *** up' " by several officers. *Id.* at 430. Photographs admitted at trial showed that the defendant's face was extremely swollen, his right eye was swollen completely shut, and he sustained numerous cuts, scrapes, and bruises. *Id.* at 435. The reviewing court found that there was sufficient evidence of excessive force such that the defendant was entitled to his requested instruction on self-defense. *Id.*

¶ 26 There was no similar evidence of excessive force here. Rather, the evidence overwhelmingly showed that defendant was belligerent and combative from the beginning of the encounter. When it was clear that defendant would not cooperate, Loechel merely grabbed his arm and tackled him, which was necessary to effect the arrest. Moreover, unlike in *Sims*, defendant did not request a self-defense instruction. To hold that the trial court was required, *sua sponte*, to instruct the jury on self-defense under these facts would mean that in virtually every resisting-arrest case the trial court would have to instruct the jury on self-defense, inviting it to speculate that the officer used excessive force. This in turn would all but eviscerate the rule that one may not resist an unlawful arrest.

¶ 27 Defendant's real argument seems to be that, because Loechel unlawfully remained at his home, all his subsequent acts were tainted, entitling defendant to resist them by any force necessary. This is not the law. Once Loechel attempted to arrest defendant, defendant was not entitled to resist. 720 ILCS 5/7-7 (West 2010). Thus, we reject this argument and affirm defendant's aggravated-battery conviction.

¶ 28 The judgment of the circuit court of Carroll County is affirmed in part and reversed in part.

¶ 29 Affirmed in part and reversed in part.