NOTICE
Decision filed 08/18/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220396-U

NO. 5-22-0396

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-CF-1526 |
| | ) | |
| MICHAEL BROCK, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The circuit court properly dismissed defendant's postconviction petition where the claims raised therein were forfeited by defendant's failure to raise them on direct appeal and where they were substantively meritless. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2     Defendant, Michael Brock, appeals the circuit court's order summarily dismissing his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the circuit court erred. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and this court has provided him with ample opportunity to respond. However, he has not done so. After considering the record on appeal and OSAD's motion supporting brief, we

1

agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     Defendant was charged with aggravated battery of a police officer and resisting a police officer. The information alleged that defendant resisted being arrested by Officer Kurt Schmulbach.

¶ 5     Before trial, defendant attempted to file a *pro se* motion to quash arrest and suppress evidence in which he contended that his arrest was illegal and, therefore, evidence of his resistance should be barred as "fruit of the poisonous tree." However, defense counsel refused to argue the motion. The State, in turn, moved *in limine* to bar any evidence of the legality of the arrest, asserting that it was irrelevant. The trial court granted the State's motion.

¶ 6     The State also moved to admit evidence of defendant's three prior felony convictions as impeachment if he testified. See *People v. Montgomery*, 47 Ill. 2d 510 (1971). The defense filed a motion to exclude those convictions. In arguing the motions, defense counsel asserted that introducing the convictions would unduly prejudice defendant given their similarity to the charges at issue. The court granted the State's motion. However, defendant did not testify so the convictions were never introduced.

¶ 7     At trial, Schmulbach testified that he and Officer Cameron Rettig were investigating an incident at a house in Lebanon. After speaking with two men there, Schmulbach believed that defendant and Brandon Harris were involved. The officers went to a neighboring house to look for defendant. Jack Brock, defendant's father, answered the door and said that defendant was not home. As they were leaving, they heard Jack Brock yelling at someone inside the house. They

2

returned to the house and, through an open window, Schmulbach heard defendant's voice, which he recognized.

¶ 8    Schmulbach yelled for defendant to come to the door, which he did. Schmulbach explained that defendant was a person of interest in his investigation. At some point, Harris also came to the door. When Schmulbach asked defendant to come to the station for questioning, defendant fled further into the house. Schmulbach went in to pursue defendant while Rettig dealt with Harris. According to Schmulbach, he repeatedly told defendant that he was under arrest. Schmulbach eventually cornered defendant in the kitchen. As the two were "actively fighting," defendant punched Schmulbach in the nose. Defendant was finally subdued when Rettig tased him.

¶ 9    Jack Brock testified for the defense that he told the officers they needed a warrant to enter the house. However, when defendant fled toward the back of the house, they came in anyway. Jack Brock did not see defendant punch Schmulbach. The officer's nose was bloodied when defendant "reflexed" while being tased by Rettig.

¶ 10    The jury found defendant guilty of aggravated battery of a peace officer and resisting. The court sentenced him to five years, six months in prison. On direct appeal, defendant's sole contention was that his sentence was excessive. We affirmed. *People v. Brock*, 2022 IL App (5th) 200179-U.

¶ 11    Defendant then filed a postconviction petition. He alleged four instances of ineffective assistance of counsel. He alleged that counsel provided " 'ineffective assistance' throughout whole procedure of Pre-Trial, Jury Trial for defense of protection [*sic*]." He also alleged that counsel was ineffective for refusing to argue his *pro se* motion to quash and suppress, failing to oppose the State's motion to introduce his prior convictions, and failing to argue that his arrest was illegal so that evidence of his resistance should have been suppressed. He also argued briefly

3

that he was not proved guilty beyond a reasonable doubt and that the proceedings violated his second, fourth, sixth, eighth, and fourteenth amendment rights. Defendant included his own affidavit in which he averred that the officers lied in their testimony, specifically about defendant punching Schmulbach.

¶ 12 The court summarily dismissed the petition. The court noted that all of defendant's claims could have been raised on direct appeal but were not. Defendant timely appealed.

¶ 13                                                  ANALYSIS

¶ 14 OSAD concludes that it can make no reasonably meritorious argument that the court erred by summarily dismissing the petition. OSAD first observes, as the court did, that all defendant's claims could have been raised on direct appeal. Issues in a postconviction petition that were decided on direct appeal are barred by *res judicata* (*People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)), and issues that could have been raised earlier, but were not, are forfeited (*People v. Blair*, 215 Ill. 2d 427, 443-44 (2005)). OSAD further notes that defendant did not claim that counsel on direct appeal was ineffective for failing to raise the issues there and that it may not raise such claims for the first time on appeal.

¶ 15 Claims not raised in a postconviction petition may not be raised for the first time on appeal from the dismissal of that petition. *People v. Jones*, 213 Ill. 2d 498, 507 (2004). This applies to a claim of ineffective assistance of appellate counsel even though such a claim is inferable from the mere inclusion of previously unargued claims in the petition. *People v. Cole*, 2012 IL App (1st) 102499, ¶ 16. Thus, defendant's claims are forfeited.

¶ 16 In any event, we agree with OSAD that those claims lack merit. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his

4

constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The Act provides a three-stage process to adjudicate petitions in noncapital cases. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At the first stage, the court independently assesses a defendant's petition within 90 days of its filing, and if the court determines that the petition is "frivolous" or "patently without merit," the court can summarily dismiss it. 725 ILCS 5/122-2.1(a)(2) (West 2020).

¶ 17 Most of the claims in defendant's petition asserted that counsel was ineffective. " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)).

¶ 18 Defendant first contended that trial counsel was generally ineffective throughout the proceedings. However, as OSAD points out, he included no allegations of ineffective representation beyond the three specific claims that followed. This allegation appears to be merely a sort of introduction to those specific claims, and we will not discuss it separately. See *People v. Coleman*, 183 Ill. 2d 366, 381 (1998) (nonfactual and nonspecific assertions that are no more than conclusions do not require further proceedings).

¶ 19 Defendant's second specific allegation of ineffective assistance—that counsel failed to oppose the State's motion to use defendant's prior convictions—is easily answered. The record shows that counsel did oppose the State's motion both orally and in writing. Moreover, defendant cannot establish prejudice because he did not testify. See *People v. Patrick*, 233 Ill. 2d 62, 77-78 (2009) (any possible harm flowing from the trial court's denial of a motion *in limine* to bar impeachment by a prior conviction is speculative absent defendant's testimony and prosecution's attempt to impeach via those prior convictions).

5

¶ 20　Defendant's remaining contentions all appear to proceed from the same flawed premise: that the alleged illegality of the arrest excused his forcible resistance. It did not. A person may not resist an arrest, even an unlawful one. And no one may batter a police officer in response to the officer's unlawful actions.

¶ 21　Defendant was convicted of aggravated battery to a peace officer and resisting a peace officer. The latter statute provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2020).

¶ 22　Because the statute criminalizes resistance only to "authorized" acts, the rule has developed that acts that are not constitutionally permissible are not "authorized" and may to a certain extent be resisted. Thus, an "officer's warrantless, nonconsensual, and forcible entry into a person's residence in violation of the fourth amendment will not be considered an 'authorized act.' " *City of Champaign v. Torres*, 214 Ill. 2d 234, 243 (2005).

¶ 23　However, section 31-1 must be read in conjunction with section 7-7 of the Criminal Code of 2012, which provides:

> "A person is not authorized to use force to resist an arrest which he knows is being made *** by a peace officer ***, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." 720 ILCS 5/7-7 (West 2020).

¶ 24　"It appears that the legislature, by adopting section 7-7, intended that the making of an unlawful arrest is to be considered an 'authorized act' for purposes of section 31-1." *People v. Locken*, 59 Ill. 2d 459, 464-65 (1974). This case is similar to *Locken*, where the defendant was convicted of resisting after he attempted to prevent an officer from arresting a third party in the

6

defendant's home. *Id.* Defendant's conviction was affirmed despite his argument that the officer lacked authority to enter his home without a warrant or probable cause. Thus, defendant's conviction of resisting was proper regardless of whether his arrest was constitutionally permissible.

¶ 25 Defendant's argument with regard to his aggravated battery conviction is even weaker. The relevant portion of the aggravated battery statute provides:

> "A person commits aggravated battery when, in committing a battery, other than by discharge of a firearm, he or she knows the individual battered to be *** [a] peace officer *** performing his or her official duties[.]" 720 ILCS 5/12-3.05(d)(4)(i) (West 2020).

¶ 26 The statute requires only that the officer be performing "official duties," rather than an "authorized act," as required by the resisting statute. This leads to the conclusion that the "official duties" need not be constitutionally permissible. As this court recently stated:

> "We do not believe that, by using the term 'official duties' in defining the offenses at issue, the legislature intended for the State to prove that every aspect of a peace officer's conduct fully complied with fourth amendment jurisprudence. Instead, we hold that, for purposes of the charges at issue here (aggravated battery with a firearm involving a peace officer, aggravated discharge of a firearm against a peace officer, and aggravated fleeing or attempting to elude a peace officer), the constitutionality of the [officers' actions] is not relevant in determining whether the officers were executing their official duties. Instead, a peace officer is executing his 'official duties' when acting in the good faith performance of his job-related duties regardless of whether those actions are later determined to be constitutionally unreasonable." *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 57.

See also *Torres*, 214 Ill. 2d at 252-53 (Freeman, J., joined by Karmeier, J., dissenting) (under the aggravated battery statute, an officer need not be engaged in an "authorized act," but only "official

7

duties"); *People v. Jones*, 2015 IL App (2d) 130387, ¶ 19 (defendant's argument that the officer's act was unauthorized did not apply to his conviction for aggravated battery, which required only that the officer be performing his official duties).

¶ 27 Here, Schmulbach testified that he was in the process of arresting defendant, and had said so repeatedly, when defendant punched him. As defendant was convicted of aggravated battery and was resisting an arrest, it simply did not matter whether the arrest was lawful.

¶ 28 Defendant's related contention that evidence of his punching the officer should have been suppressed as the "fruit" of an illegal arrest has been rejected. In *People v. Villarreal*, 152 Ill. 2d 368 (1992), the court noted that the "fruit of the poisonous tree" doctrine requires the exclusion of evidence of past or contemporaneous crimes obtained through unlawful police conduct, the purpose being to discourage such conduct by making evidence obtained thereby worthless. However, the court firmly rejected the invitation to apply the rule to the defendant's actions in resisting that conduct, stating:

> "We and other courts, through whose decisions the rule of exclusion has evolved, have not contemplated that one who commits an unlawful homicide, assault, or other offense in reaction to an illegal search would be entitled to suppress the evidence of his deed. To countenance, through the use of the exclusionary rule, what can be regarded as an unlawful species of self-help would be to encourage unlawful and retaliatory conduct." (Internal quotation marks omitted.) *Id.* at 378-79.

¶ 29 Defendant's reasonable doubt argument also seems to proceed from the premise that the allegedly unlawful nature of the arrest excused his conduct. In his petition and accompanying affidavit, defendant asserted that there was no evidence of how he became a "person of interest" in Schmulbach's investigation, that the witness who allegedly implicated him did not testify and

was unavailable to the defense, and that there was no evidence that Schmulbach had a warrant for defendant's arrest. Of course, the court's ruling on the State's motion *in limine*, which defendant does not contend was erroneous, barred such evidence because, as we have shown, it was irrelevant. Defendant was not privileged to resist the arrest even if it had been illegal.

¶ 30 When a defendant challenges on appeal the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Hagberg*, 192 Ill. 2d 29, 33-34 (2000). As noted, Schmulbach testified that he was engaged in arresting defendant when defendant punched him in the nose. This was sufficient to prove that defendant battered Schmulbach while he was engaged in his official duties and that defendant resisted an authorized act.

¶ 31 In his affidavit attached to the petition, defendant averred that he did not punch Schmulbach. But defendant may not use his affidavit—which is not subject to cross-examination—to dispute the trial evidence long after the fact. The trial court told defendant that he had the right to testify but he declined. The evidence that was presented was sufficient to prove his guilt.

¶ 32 A postconviction petitioner may advance a claim based on newly discovered evidence. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). However, defendant's affidavit, which merely recounted his version of the underlying incident, and which largely mirrored his father's testimony at trial, was clearly not newly discovered. See *id.* at 334 ("newly discovered evidence" is defined as that which has been discovered since trial and could not have been discovered sooner through due diligence).

9

¶ 33    Finally, we agree with OSAD that defendant's omnibus argument that the proceedings violated various of his constitutional rights fails for lack of specificity.  Apart from the specific allegations already discussed, defendant provides no specific examples of how his second, fourth, sixth, eighth, and fourteenth amendment rights were violated.  See *Coleman*, 183 Ill. 2d at 381 (nonfactual and nonspecific assertions that are no more than conclusions do not require a hearing).

¶ 34                                CONCLUSION

¶ 35    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 36    Motion granted; judgment affirmed.